Withers, J.,
dissenting. It is a necessary consequence of the relation of master and slave, that whatsoever of property the latter acquires belongs to the master. This follows, as a consequence, from the substantial principle, that tbe civil rights of tbe slave are centered in tbe master. Tbe doctrine is more generally true in relation of master and slave than in that of master and apprentice. It is not disputed that if salvage be earned by an apprentice, not a slave, that acquisition will be tbe peculium cf tbe apprentice, not of tbe master.
Tbe ground upon which such acquisition is held to be appropriated to tbe person who holds a slave upon a contract of hiring, is, that he is the owner of tbe slave, pro hac vice, that is, for tbe term of the hiring, and entitled to all acquisitions meantime, as tbe absolute owner is generally.
Many of our cases have treated him who hires a slave for a term, as the purchaser of the services of the slave for and during that term ; and such decisions are not only authority for us, but satisfactory authority, because they are founded on solid grounds. Tbe question is whether such doctrine carries to such temporary purchaser tbe salvage awarded, under tbe law maritime, to the slave, who performs tbe office of humanity, which that law so anxiously encourages and rewards ?
*298 Salvage is tbe reward, allowed by maritime law to persons, wbo, though not bound by duty nor induced by interest so to do, save a ship or its loading from impending perils of the sea, or recover them after actual loss at sea. Such a person is called a voluntary adventurer, in the cause of humanity, at sea, for like service on land, in case of fire, storm, or earthquake, does not meet with the reward bestowed by the law of the sea.
It is argued that the law maritime addresses the sentiments of the master of a vessel, and hence he is to represent the slave under his authority on hire in the apportionment of salvage, and to absorb it, because it is his action and risk that is encouraged and rewarded. The question occurs, why then is the award made per capita; why is it the peculium of the apprentice or common sailor? If the humane emotion of the master of a vessel is the object addressed, then in those eases where a slave may be' the master, (and it is presumed he sometimes is,) the address, if effectual, must be to Ms sentiment of humanity reinforced by the reward in expectancy.
Then as to the risk, so great an element in this maritime principle of law. However, in a general sense a slave is property, he is a person when his life is at. stake, and if that be forfeited in obeying a humane impulse, the loss is the absolute owner’s, even though he be on hire, for if the master as in this case, hires his slave to a seafaring man, he knows that he may be called upon to perform the hazardous service of wrecking as incident to the service for which he is let to hire, and therefore, if his life be sacrificed, as the consequence of a wrecking adventure and by no special and blameable negligence on the part of him who hires, the entire loss of the slave as property is that of the absolute owner. The object of the maritime law of salvage, “looking (as expressed in 1 Sum. 400) to the common interest and safety of the whole commercial world, in cases of this sort,” may well be *299 subserved by bolding that tbe absolute owner of a slave, let to hire, bas tbe inducement held out to bim of salvage, by way of reward, to commit bis slave to tbe hazards of wrecking when tbe contingencies of a seafaring life invite to tbe service, instead of clogging tbe contract 'of hiring with a restriction which would not harmonize with tbe enlarged humanity which lies at tbe bottom of tbe law of salvage, aiming at tbe great end of preserving life, in imminent peril, as well as property. Strongly corroborative of this view is tbe doctrine that tbe owner of tbe cargo of a salving ship is entitled to no salvage, because be is secure in tbe liabilities of others to reimburse bis loss if it occur from a deviation by tbe master for salvage, while tbe owner óf tbe vessel is held entitled to share liberally in tbe salvage, provided be bas not clogged tbe master in respect to salvage adventure, by restrictive instructions, and in tbe latter case bis reward will be far-more restricted. This award to tbe owner, is founded upon tbe policy of encouraging tbe owner to forbear such odious and (as it would seem unexampled) instructions, and in such, cases the amount awarded is irrespective of actual loss from consumption of time, enhanced wages, or loss of insurance:. (vide more at large upon this subject tbe observations of Justice Story in tbe case of The ship Nathaniel Hooper, 8 Sum. 575,) it is presumed that tbe master bas an implied authority from tbe owner to deviate or delay and imperil tbe ship in an adventure for salvage, and tbe owner shall freely participate in tbe reward consequent thereupon, to tbe end of an astute and high policy, to wit: that tbe master shall not be estopped, on tbe one band, to render a great office of humanity for a great and common good, nor tempted on tbe other to imperil, unreasonably and recklessly, by tbe hope of selfish gain, tbe property of tbe owner, and multiply bis liabilities, which would result from permitting bim to absorb tbe entire reward. There seems to be a striking fitness in this reasoning, for tbe case in band. There is an intelligible and politic principle in *300 it. It combines tbe interests of the absolute owner of the slave and of him who hires in just moderation, and blends both with the solid considerations upon which the law of salvage reposes. The master uses the ship of one and the negro of another in the enterprise for salvage. It shall be implied in the absence of express restriction to the contrary, that he has equally the authority of each so to do; and that each may be induced to permit the risk, he shall, by parity of reason, have the reward. The inducement to the master. of the vessel,' (and if owner and master it will be precisely the samef);beingi'still sufficient to secure the exertion on his part which'the- lasy se%s with rewards to encourage to the reasop-abje,pxtent, yet, sofadjusted as not to inflame selfishness extravagantly.. • Qpe, consideration makes it especially desirable to;-give to thdb&ner the salvage awarded to or for the exer&qns’b'f-the slave.* It is this: that if he who hires have the rewalsd, he maybe tempted himself to trespass upon humanity by sending slaves held on hire into reckless danger of life, in hazardous communications with a vessel, or persons in distress, where he would not risk himself or others who acted under their own sense of -prudent restraint or circumspection, and when his own property or. that of his owners, may not be involved in the risk, equally or at all. The only way to moderate a dangerous selfishness on the part of the master, in respect of the vessel, we have already seen, is to award salvage to the owner of it, and the reason is stronger to do the like towards the owner of the slave in proportion to the enhancement of the risk to which the slave will be exposed. So far as the decision o'f the Court is led by the idea that the reward sought in this action, is part and parcel of the emolument earned by the slave in the course of his labor and service, and as such belongs to the estate of the de-ceasedwho purchased such labor and service, (and this upon the authority of a current of our decisions,) it is believed that error lurks in that proposition. The authorities cited do *301 abundantly maintain, tbat salvage is awarded, not pro opere et labore, tbat it is not on any conception of quantum meruit; tbat it is above contract; tbat a Court of Admiralty will disregard a contract made by those wbo save witb those who are rescued; tbat the service is gratuitous, and the reward decreed, not for the time employed, the value of what is saved (for bow could life be estimated?) nor according to burthen of the labor, nor for the risk of life or property, for none of these singly, but for all combined, and in addition to all as well as in an eminent degree, the award is decreed, the xebbiuu. AbicjA ui jjiujjoi uy uj cuibcuvui always thau the risk of bis life, andPafere' consuming time and fatiguing body less«sc the risk of life being the risk of tbWowner ojfffslave, so far as the question in this cáse is concerned, this would point to the owner as the proper recipient of the bounty. Thei’e is not time, nor is there necessity to reproduce here, the authorities which amply sustain the propositions just above laid down. These propositions lift this case above the grounds upon which our own cases, touching owner and hirer, have been decided, which may be assumed to be right, but depend upon principles not at all common to them and the cause now before us. But if, in obedience to our cases, ■ there should be apportioned to the defendants so much of the salvage awarded for John as would compensate for the mere service, labor or time, then it may be done by making the requisite estimate growing out of the evidence touching that matter.
It is admitted, that the plaintiff knew when he let his slave on hire that he was committed to a service of which wrecking was an incident, and from this the consequence is deduced, that wrecking being a part of the service which it was known *302 be might render, the emolument must go to him who bought the services. But non constat: the true proposition is, that he knew his slave might be employed in such extraordinary service or adventure and if lost thereby he could not call upon McGee for indemnity, yet he also knew that such risk was the owner’s, and the extraordinary earnings would be his.
Having indicated, and aiming at no more, the prominent considerations which withhold a concurrence with the majority of this Court, extended illustration must be left to those who have leisure and taste to pursue the subject.
Wardlaw, J. I join in this dissenting opinion.

Motion refused.